# R. D. Nuttall Company, Defendant in Error, v. Armac Motor Company, Plaintiff in Error.

## Gen. No. 15,858.

SALES—*effect of acceptance of merchandise sold under executory. contract.* In the absence of fraud or latent defects, the acceptance of articles sold under an executory contract after an opportunity to examine them, is an assent and agreement that the quality and workmanship is satisfactory and as conforming to the contract, bars a claim for compensation for any defect that may exist in the articles and also bars the right of rescission.

Error to the Municipal Court of Chicago; the Hon. ROBERT H. SCOTT, Judge, presiding.    Heard in this court at the October term, 1909. Affirmed.    Opinion filed October 5, 1911.

**Statement by the Court.** This writ of error is prosecuted to reverse a judgment of the Municipal Court of Chicago, sitting without a jury, in favor of R. D. Nuttall Company, a corporation, against Armac Motor Company, a corporation.    The judgment is for $121 and costs.    The defendant (plaintiff in error here) claims that the judgment should instead have been for $200 on a counter claim filed by it.    The suit by the plaintiff was to recover the balance of $121 due on the sale and delivery of gear wheels to the defendant to the amount at a stipulated price of $1035.    Nine hundred and fourteen dollars had been paid on this account previous to the bringing of this suit.    In defending, the defendant by affidavit set up "an offset or counter. claim against the said plaintiff in the sum of $200 for defective gear wheels furnished by plaintiff to the defendant, which were used in construction of its engines, but by reason of defect in cutting and also in failing to fasten the said gear wheels to the intermediate shaft as directed, the defendant was required to and did take

apart the said engines and correct the defects aforesaid.''

Various propositions of fact and various propositions of law were submitted to the court by each party at the trial, some of which it held and some of which it refused to hold. They appear in the Transcript of the Record in this court.

The assignments of error made by the plaintiff in error in this court attack generally the finding and judgment of the court for the plaintiff, and particularly the holding of certain of the propositions of law and of fact tendered by the plaintiff and refusing to hold certain propositions tendered by the defendant.

THORNTON & CHANCELLOR, for plaintiff in error.

ELBERT C. FERGUSON, for defendant in error.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

We do not think it necessary in deciding this case to discuss all the propositions of the law of sales, which were set forth in the propositions of law tendered to the court by the respective parties and have been argued herein. One which was properly held by the trial court was sufficient to control the disposition of the suit.

It was ''That in the absence of fraud or latent defects, the acceptance of articles sold under an executory contract after an opportunity to examine them, is an assent and agreement that the quality and workmanship is satisfactory and as conforming to the contract, bars a claim for compensation for any defect that may exist in the articles and also bars the right of rescission.''

This correctly states the law. That it is applicable to the facts of this case and that the defendant's counter claim of setoff is barred by it, we think it

only needs an examination of the correspondence, chronologically arranged, to see.

The correspondence between the plaintiff and defendant seems to have opened by a letter of the Motor Company to the Nuttall Company of December 20, 1906, referred to in an answer to that letter by the Nuttall Company on December 28, 1906. The letter of the Motor Company had contained apparently a request for prices of gears like a sample forwarded. After a further interchange of letters, the Motor Company on January 14, 1907, asked the Nuttall Company to make them 25 sets of gears, saying that they wanted the 25 as a sample and "if the samples were correct in every detail" they would then order 500. This order the Nuttall Company immediately acknowledged. Following this was some correspondence explaining details. On April 27, 1907, the Motor Company wrote the Nuttall Company:

"The gears arrived and look very nice. On some of them we find a rather poor thread and with that exception they seem to be all right. You may enter our order for 500 of each size to be exactly like the twenty-five which you sent us and to have perfect threads, and we should like say 50 of each size sent us at once if possible and would like 50 more in two weeks, and thereafter if you could send us 100 of each size every month it would help us out very nicely. We use these in sets of three, one of each size on an engine, and so that when we order say 50 of each size we mean 50 sets. Kindly let us know if you could make an immediate shipment of 50 sets. If not, how soon will you be able to accommodate us with say 50, and advise whether or not we may expect you to ship us 100 set per month until the order is filled."

May 7, 1907, the Motor Company again writes the Nuttall Company, expressing impatience at not having had an answer to theirs of April 27th.

Under date of May 8th the Nuttall Company sends an acknowledgment of receipt of order of April 27th

and notes that it is to be careful in the threading, because of complaint in previous order, and that 50 sets (i. e. 150 out of the 1,500 gears ordered) are to be delivered as soon as possible, 50 to follow in two weeks and balance 100 a month.

The first gears—150 (50 sets)—were shipped June 17, 1907, and the rest as follows:

150 on June 26, 1907;
300 on July 11, 1907;
300 on July 27, 1907;
135 on Aug. 10, 1907;
255 on Aug. 16, 1907;
 61 on Aug. 25, 1907;
149 on Sept. 24, 1907.

Total 1500.

Some question was made about the dates of shipment or delivery by a witness for the defendant (the goods came from Pittsburg to Chicago), and counsel for the plaintiff in error have fallen into the very vital mistake of supposing (according to their argument) that the first shipment was delivered in August, 1907, and the last one in August, 1908. But nothing is more certain than that the shipments were made at or about the dates specified above and delivered shortly thereafter, according to due course. Not only is this the testimony of Mr. Allen, the bookkeeper of the Nuttall Company, who swears to the correctness of the statement showing these dates, but it is in substantial accordance with the terms of the order and is shown to be the fact by the whole course and tenor of the subsequent correspondence. Thus on August 11, 1907, the Nuttall Company received from the Motor Company payment according to the agreed price for the shipments of June 17th and June 26th, and on September 18, 1907, for the shipment of July 11th.

August 27, 1907, when certainly 149 and probably 210 gear wheels were yet to be received by the Motor

Company, it writes to the Nuttall Company: "We wish to inform you that we have had some trouble with the pin breaking in the intermediate gear wheels which we purchased from you. Kindly see if you cannot remedy this."

It may be noted that no other complaint was made in this letter, although the shipments were so nearly concluded and although it is now claimed by the defendant that there were defects in the gears plainly apparent to the naked eye.

But stranger still, if the present contention of the defendant be correct, was its subsequent action. On September 24, 1907, the last shipment was made. After that delivery had been made and the credits of the two payments already made given, the account against the Motor Company in favor of the Nuttall Company was $621. But it is evident that the agreed terms of payment, which are not given in the evidence, had not made the $102.05 accruing from the shipment of September 24th then due. On October 12, 1907, the manager of the Motor Company writes a very apologetic letter to the Nuttall Company, saying that the treasurer is absent from the City, which accounts for delay in remitting, but that patience will result in a check being sent.

October 28, 1907, the Nuttall Company writes the Motor Company, pressing for payment of the overdue balance of $518.95 ($621 less $102.05), "considerably past due." Later it telegraphed to the same effect, and November 7, 1907, the manager of the Motor Company writes, regretting inability to remit, the company having, as he says, "about the worst time in its existence in making collections;" they "hope in the very near future to satisfy the claim."

There followed another dunning letter from the Nuttall Company on November 16th, and on November 27th, when the $102.05 for the last shipment had evi-

dently become due, it writes relative to the ''overdue balance'' of $621.

The Motor Company was short of money and wrote on November 30th, on December 6th and on December 11th apologetically, promising payment in the near future and thanking the Nuttall Company for its indulgence and leniency, but never hinting at any dissatisfaction with the amount of the claim. On December 23, 1907, the Motor Company sent the Nuttall Company a check for $150, the first payment since September 18th, and promised more in January. In January, 1908, it sent $100 more, in February, $100, in March, $50, on June 8th, $50, and on June 30th, $50. The correspondence, however, on the part of the Motor Company was by no means confined to the letters which enclosed these remittances. At least three other letters between January 1, 1908, and July 1, 1908 (answering requests from the Nuttall Company for remittance), appear in the record, all, like the ones enclosing the checks, apologetic and deprecatory, and no one suggesting any dissatisfaction with the goods or the account. After the payment of June 30, 1908, there was only $121 due, the amount later sued for and recovered in this suit; and on that date the Motor Company wrote that just as soon as they had remittances from the Coast which they were expecting they would see that the Nuttall Company was taken care of, and requested further patience. The Nuttall Company on August 22, 1908, reminded the Motor Company that the account had been running a full year. On October 7th, 1908, the Motor Company wrote by the hand of Mr. Hartenstein, its president and manager, as he testifies, the letter on which it relies to show its complaint about the gears. This letter the Nuttall Company does not admit receiving, but we may assume that if sent it was received. It runs as follows:

''We have been doing all we can to wipe out your account, but must candidly say that your gear wheels

are getting worse as we continue to use them.   They run all the way from 5-1000 to 25-1000 of an inch out of regular size, which any ordinary person can see without using a pair of callipers, center pins breaking and not a tight pin in any of them.   We will be compelled to make new pins for over 100 sets.   Can you suggest anything in the matter?   Trusting to hear from you promptly, we beg to remain.''

If this letter is to be construed as evidence of a rejection of any of the goods or a counter claim for damages, it came too late.   It was, moreover, strange in that view that it should be followed by a letter from the Motor Company to the Nuttall Company on October 22, 1908, in which they promise to remit ''about the 8th of the coming month,'' and close by saying that they trust that the Nuttall Company ''will have patience with them for a short time'' and thank them ''for the leniency extended in the past.''

The judgment of the Municipal Court is affirmed.

*Affirmed.*